J-S38017-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: R.B.Y. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: B.Y. A/K/A B.J.Y. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1088 EDA 2019 |

Appeal from the Decree Entered February 15, 2019
In the Court of Common Pleas of Bucks County Orphans' Court at No(s):
2018-9144

BEFORE:   OTT, J., DUBOW, J., and COLINS*, J.

MEMORANDUM BY DUBOW, J.:                    **FILED SEPTEMBER 12, 2019**

B.Y. ("Father") appeals the Decree entered February 15, 2019 involuntarily terminating his parental rights to his minor daughter, R.B.Y. (born February 2015) ("Child").[1]  Because the record supports the decision of the orphans' court, we affirm the Decree.

**FACTS AND PROCEDURAL HISTORY**

The orphans' court set forth the procedural and factual history of this matter as follows:

Mother [] and Father are the biological parents of R.B.Y. who was born [February] 2015.  [Bucks County Children and Youth Social Services Agency ("CYS" or "the Agency")] first received a referral regarding this family in January of 2016 when Mother was

---

[1] The court also involuntarily terminated the parental rights of Child's mother, H.L.T. ("Mother").  Mother did not appeal the Decree involuntarily terminating her parental rights, and has not participated in this appeal.

---

\*   Retired Senior Judge assigned to the Superior Court.

the passenger in a vehicle involved in a hit and run accident. The responding police officer observed empty baggies and needles in the vehicle. Mother and Father submitted to drug tests on January 13, 2016, both of which were positive for cocaine. The Agency made referrals for both parents for substance abuse treatment.

Between January of 2016 and May of 2016, the Agency provided general protective services to the family. As part of the general protective services implemented, a safety plan was put into effect. Pursuant to the safety plan, neither parent was to have unsupervised contact with [C]hild.

In March of 2016, less than two months after the Agency became involved with this family, Father was charged with retail theft and eventually sentenced to confinement in a state correctional facility. In May of 2016, a dependency petition was filed. On May 9, 2016, [C]hild was adjudicated dependent. [C]hild was placed in the legal and physical custody of the Agency. [C]hild was then placed with [Child's] [m]aternal [g]randmother.

After [C]hild came into care, the Agency developed a Placement Permanency Plan containing objectives that Father needed to satisfy for reunification to be a possibility. The primary objectives of both Mother's and Father's Plans were to abstain from drug use, complete substance abuse and mental health evaluations and treatments, obtain a source of income to support [C]hild, and obtain and maintain suitable housing to accommodate [C]hild.

In 2017, during a dependency court hearing, the Honorable Robert J. Mellon suggested that the Agency refrain from pursuing termination of Father's parental rights until after Father was released from prison in order to provide him with another opportunity to comply with the Agency's objectives and to parent [C]hild. Father was released from prison on March 8, 2018. Between January of 2016 and Father's release from prison in March of 2018, Father visited with [C]hild on two occasions.

Forty-two days after Father's release from prison, on April 20, 2018, he was arrested for another retail theft. Father was sentenced to confinement in a state correctional institution for eighteen to thirty-six months stemming from that offense. Father is presently incarcerated in SCI-Chester. Father's minimum

- 2 -

release date is October 20, 2019, and his maximum release date is April 20, 2021. Father has spent the majority of his adult life incarcerated. Father, presently forty-two years old, was first exposed to the criminal justice system in 1994 when he was eighteen years old.

Throughout the forty-two days that Father was in the community between incarcerations during 2018, Father saw [C]hild only one time. Between April of 2018 and January of 2019, Father saw [C]hild three or four times before eventually consenting to the termination of visits with [C]hild.

Orphans' Court Opinion, 4/22/19, at 1-4 (citations to the record and footnotes omitted).

On November 26, 2018, CYS filed a Petition for a Decree of Involuntary Termination of Father's parental rights. On January 25, 2019, the court conducted an evidentiary hearing on the Petition.[2] At the hearing, CYS presented the testimony of Emily Salukas, the CYS caseworker, as well as Father as on cross. On February 15, 2019, the court entered a Decree involuntarily terminating Father's parental rights to Child. Thereafter, Father filed a Notice of Appeal and Concise Statement of Errors Complained of on Appeal.

**ISSUE ON APPEAL**

Father raises the following issue on appeal: "Has [CYS] met the requirements of 23 Pa.C.S.A. § 2511(a)(2), (5), and (8) when [CYS] has not

---

[2] Prior to the hearing, the orphans' court appointed Attorney Emily Ward to act as legal counsel and Guardian *Ad Litem* ("GAL") for Child, who was not yet four years old. As such, we find the requirements of 23 Pa.C.S. § 2313(a) were satisfied.

produced clear and convincing evidence that the minor children [sic] were not bonded, that the termination of the father's parental rights would best serve the needs and welfare of the child, nor that he is unable to remedy the issues that caused the children [sic] to be taken into care?"  Father's Brief, at 4.

**LEGAL ANALYSIS**

In reviewing cases involuntarily terminating parental rights, appellate courts must accept the findings of fact and credibility determinations of the orphans' court if the record supports them.  ***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013).  "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." ***Id***. (citations omitted).  Where the hearing court's findings are supported by competent evidence of record, we must affirm the hearing court even though the record could support an opposite result.  ***In re Adoption of Atencio****,* 650 A.2d 1064, 1066 (Pa. 1994).

> We are bound by the findings of the trial court which have adequate support in the record so long as the findings do not evidence capricious disregard for competent and credible evidence.  The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence.  Though we are not bound by the trial court's inferences and deductions, we may reject its conclusions only if they involve errors of law or are clearly unreasonable in light of the trial court's sustainable findings.

***In re M.G.***, 855 A.2d 68, 73–74 (Pa. Super. 2004) (citations omitted).

We defer to the orphans' court that often has "first-hand observations of the parties spanning multiple hearings."  ***In re T.S.M****.*, ***supra*** at 267

- 4 -

(citations and quotation marks omitted). Importantly, "[t]he court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future. Indeed, we work under statutory and case law that contemplates only a short period of time . . . in which to **complete** the process of either reunification or adoption for a child who has been placed in foster care." ***In re Adoption of R.J.S.,*** 901 A.2d 502, 513 (Pa. Super. 2006) (emphasis in original; citations omitted).

In addressing Petitions to Involuntarily Terminate Parental Rights, the Adoption Act[3] requires courts to conduct a bifurcated analysis. Pursuant to Section 2511, the court first focuses on the conduct of the parent. If the party seeking termination presents clear and convincing evidence that the parent's conduct meets one of the grounds for termination set forth in Section 2511(a), then the court will analyze whether termination of parental rights will meet the needs and welfare of the child, *i.e.*, the best interests of the child, as provided in Section 2511(b). 23 Pa.C.S. § 2511(a) and (b); ***In re L.M.***, 923 A.2d 505, 511 (Pa. Super. 2007). "One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond." ***Id.*** at 511 (citations omitted).

While the orphans' court here found that CYS met its burden of proof under 23 Pa.C.S. § 2511(a)(2), (5), and (8), as well as (b), we need only

---

[3] 23 Pa.C.S. § 2101-2938.

agree with its decision as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm the termination of parental rights. ***See In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Here, we will focus our analysis on Section 2511(a)(2) and (b), which provides as follows:

> **§ 2511. Grounds for involuntary termination**
>
> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> * * *
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> * * *
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2) and (b).

**Termination Pursuant to Section 2511(a)(2)**

- 6 -

We first conclude that the orphans' court properly exercised its discretion by terminating Father's parental rights pursuant to Section 2511(a)(2).

Our Supreme Court set forth our inquiry under Section 2511(a)(2) as follows:

> As stated above, § 2511(a)(2) provides statutory grounds for termination of parental rights where it is demonstrated by clear and convincing evidence that "[t]he repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent." . . .
>
> This Court has addressed incapacity sufficient for termination under § 2511(a)(2):
>
> A decision to terminate parental rights, never to be made lightly or without a sense of compassion for the parent, can seldom be more difficult than when termination is based upon parental incapacity. The legislature, however, in enacting the 1970 Adoption Act, concluded that a parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties.

**In re Adoption of S.P.**, 47 A.3d 817, 827 (Pa. 2012) (citations omitted).

To satisfy the requirements of Section 2511(a)(2), the moving party must produce clear and convincing evidence regarding the following elements: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot

or will not be remedied. ***See In re Adoption of M.E.P.***, 825 A.2d 1266, 1272 (Pa. Super. 2003). The grounds for termination of parental rights under Section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties. ***In re A.L.D.***, 797 A.2d 326, 337 (Pa. Super. 2002).

This Court has long recognized that a parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. ***Id.*** A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. ***Id.*** at 340.

With respect to incarcerated parents, our Supreme Court has held that "incarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing essential parental care, control, or subsistence." ***In re Adoption of S.P.***, 47 A.3d 817, 830 (Pa. 2012) (citation and internal quotation marks omitted). Notably, "the length of the remaining confinement can be considered as highly relevant to whether the conditions and causes of the incapacity . . . cannot or will not be remedied by the parent, sufficient to provide grounds for termination pursuant to 23 Pa.C.S. § 2511(a)(2)." ***Id.*** (internal quotation marks omitted).

Also relevant are the efforts the parent made to care for a child before the parent was incarcerated as an indication of the efforts the parent will make

when the parent is no longer incarcerated. ***See Z.P.***, 994 A.2d at 1126 (terminating parental rights of incarcerated father after examining his parenting history before incarceration and finding "Father's overall parenting history revealed no genuine capacity to undertake his parental responsibilities"); ***In re E.A.P.***, 944 A.2d 79, 83 (Pa. Super. 2008) (terminating parental rights of incarcerated mother after examining her pre-incarcerated parenting and determining that her repeated incarcerations indicated she did not have the capacity to parent).

Another factor to consider is the parent's effort to maintain a relationship with a child while incarcerated*. **E.A.P.***, 944 A.2d at 83. However, this factor is not determinative because the orphans' court may place weight on other factors even when the parent is doing what he is supposed to do while incarcerated:

> Each case of an incarcerated parent facing termination must be analyzed on its own facts, keeping in mind, with respect to subsection (a)(2), that the child's need for consistent parental care and stability cannot be put aside or put on hold simply because the parent is doing what she is supposed to do in prison.

***Id.*** at 84. In other words, the orphans' court must consider "[t]he complete circumstances" of the case. ***Z.P.***, 994 A.2d at 1125.

Father contends that the orphans' court erred in terminating his parental rights pursuant to Section 2511(a)(2) because the conditions and causes of his parental incapacity have been remedied. Father's Brief, at 12. Father asserts that the initial cause of his parental incapacity was drug abuse, and

that the record is devoid of any recent positive drug tests. *Id.* Father argues that, while incarcerated, he has taken classes and has learned trades, such as contracting, that he will put to use when released. *Id.* Father further argues that he will obtain a job to support himself and his daughter upon his release from prison. *Id.* Accordingly, Father asserts that the orphans' court erred in terminating his parental rights pursuant to Section 2511(a)(2).

In terminating Father's parental rights pursuant to Section 2511(a)(2), the orphans' court credited testimony that Child was placed in the care and custody of CYS in May 2016 as a result of Father's drug use and inability to provide a stable home for Child, primarily due to his continuous cycle of criminal activity. Orphans' Court Opinion, 4/22/19, at 9. The orphans' court noted that Father has been incarcerated on approximately twenty different occasions since 1994, and engaged in criminal activity only a few months after CYS's involvement. *Id.* at 3, 9. In 2017, CYS refrained from pursuing termination until after Father was released from prison in March 2018 to allow Father an opportunity to show he could care for Child. *Id.* at 9. The court observed that, upon his release, Father did not assume his parental responsibilities, visited with Child only once, and was incarcerated forty-two days after his release based upon new criminal charges. *Id.* at 3, 9-10. Due to Father's move to a state correctional institution, Father has not seen Child after November 2018. *Id.* at 10.

While the court noted Father could be paroled as early as October 20, 2019, the court determined Father engaged in a course of criminal activity throughout his adult years that he is either unwilling or unable to control. *Id.* Further, the court found Father's ability to parent Child is inadequate despite years of services and opportunities to improve. *Id.* The court concluded Father will not or cannot remedy the causes of his parental incapacity, and that termination was appropriate pursuant to Section 2511(a)(2). *Id.* at 11.

Having reviewed the record, we conclude that it supports the findings of the orphans' court that Father has not provided Child with the essential parental care, control and subsistence necessary for her mental and physical well-being, and that Father is unable to remedy the causes of his parental incapacity, neglect or refusal any time in the foreseeable future. Thus, Father is not entitled to relief.

**Termination pursuant to Section 2511(b)**

We also conclude that, pursuant to Section 2511(b), the orphans' court properly determined that termination of Father's parental rights would be in the best interests of Child.

With respect to Section 2511(b), we consider whether termination of parental rights will best serve Child's developmental, physical, and emotional needs and welfare. *See In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010). "In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing,

necessary and beneficial relationship." *Id.* "[A] parent's basic constitutional right to the custody and rearing of . . . her child is converted, upon the failure to fulfill . . . her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." *In re B.,N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004) (internal citations omitted).

It is sufficient for the orphans' court to rely on the opinions of social workers and caseworkers when evaluating the impact that termination of parental rights will have on a child. *In re Z.P.*, *supra* at 1121. The orphans' court may equally emphasize the safety needs of the child and may consider intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. *See In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011). Ultimately, the concern is the needs and welfare of a child. *In re Z.P.*, *supra* at 1121.

Father argues the orphans' court erred in its analysis of Child's needs and welfare because of the bond between Father and Child. Father's Brief, at 13. Father asserts that Child loves Father and enjoys playing with him, and that the bond between Father and Child weighs heavily in favor of not terminating his parental rights. *Id.*

The orphans' court concluded that CYS met its burden of proof pursuant to Section 2511(b), observing that Father has been incarcerated for the majority of Child's life, and, during the forty-two days when Father was not

- 12 -

incarcerated in 2018, he only saw Child one time. Orphans' Court Opinion, 4/22/19, at 12. Further, following Father's incarceration in April 2018, he eventually consented to the termination of visits with Child. *Id.* The court concluded that Child may recognize B.Y. as her father, but does not share a meaningful bond with Father. *Id.* In contrast, the court credited testimony that Child has resided with her maternal grandmother since 2016, is in a safe and stable household, and is bonded to her maternal grandmother. *Id.* at 12-13. Child also resides with her half-brother, whom her maternal grandmother has adopted. *Id.* at 12. Further, Child's maternal grandmother is an adoptive resource for Child. *Id.* at 13. Based on the credited testimony, the court concluded terminating Father's parental rights best met Child's needs and welfare. *Id.*

Our review of the record supports the orphans' court's findings. The orphans' court appropriately considered the relationship between Child and Father, and determined that providing Child safety and stability through the termination of Father's parental rights was in Child's best interests. We do not discern an error of law or abuse of discretion with respect to the orphans' court's conclusion, and thus affirm the court's determination that involuntary termination of Father's parental rights is in the best interests of Child.

Decree affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/12/19